# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| NICHOLAS A. USLER, JON EVANS, ANDREW ANDRADA, HANNAH VOSSEN, NOAH TANZ, KENNY KIERMAN, CHARLES SANKOWICH, BURCU KARACA, and KARA GOZDE, <br> Plaintiffs, <br> V. <br><br> VITAL FARMS, INC., MATTHEW O'HAYER, RUSSELL DIEZ-CANSECO, and SCOTT MARCUS, <br> Defendants. | § § § § § § § § § § § § § § | A-21-CV-447-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Vital Farms, Inc.'s Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. #17), Defendants Matthew O'Hayer, Russell Diez-Canseco, and Scott Marcus's Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. #18), Plaintiffs' Consolidated Response (Dkt. #22), and Defendants' Consolidated Reply (Dkt. #23).[1] Having considered the motions, pleadings, and applicable law, and finding a hearing is not necessary, the undersigned submits the following recommendations to the District Judge.

## I.  BACKGROUND[2]

Plaintiffs bring suit, on behalf of themselves and all others similarly situated, against Vital Farms, Inc. ("Vital Farms"), an egg seller; Matthew O'Hayer, Vital's Founder and Executive

---

[1] The motions and related briefing were referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.
[2] At this stage of the litigation, all well-pleaded facts are taken as true.

1

Chairman of Vital; Russell Diez-Canseco, Vital Farms' Chief Executive Officer and a Director; and Scott Marcus, Vital Farms' Chief Marketing Officer.[3] Dkt. #1 (Compl.) at ¶¶ 1, 25, 26, 27. Generally, Plaintiffs allege Vital Farms "markets itself as an ethical company that treats animals in an ethical, humane, and transparent manner," but Vital Farms' "marketing is false and misleading, and its consumers have been tricked into paying an unjustifiably high premium." *Id*. at ¶ 1. Specifically, Plaintiffs contend Vital Farms represents its operations through photographs of hens outdoors in green grass and describes its operations as "ethical" and "humane." *Id*. at ¶ 39. In reality, Plaintiffs allege Vital Farms acquires female chicks from hatcheries that kill male chicks, *id*. at ¶ 43c; force hens to lay one egg per day—which decreases their long-term ability to lay eggs and causes other health issues—and sell them to be killed when they can no longer lay eggs daily, *id*. at ¶ 43a; and condone farmer beak cutting, *id*. at ¶ 43b. Plaintiffs allege that Vital Farms has represented that it maintains a close connection to a team of scientists developing technology to identify and prevent male chicks from hatching—thus reducing the need to cull them—when Vital Farms has actually sued the developer of this technology for fraud, *id*. at ¶ 43c.ii. Additionally, in contrast to Vital Farms' representations that its hens are "pasture raised," Vital Farms "stocks hens indoors at extreme densities," preventing them from engaging in natural behaviors that are key to preventing undue physical and psychological pain, and many hens will never or ineffectively access outdoor pastures, *id*. at ¶ 46.

Plaintiffs, residents of Michigan, California, Texas, Florida, New York, bring claims on their own behalf and a purported nationwide class, with various state subclasses. *Id*. at ¶¶ 15-23. They assert the following causes of action:

---

[3] The individual defendants will be referred to collectively as the "Individual Defendants."

- Count I: Breach of Express Warranty under Texas Law and the Law of the State of Residence of Each Class Representative Respectively (On Behalf of Each State Class), *id.* at ¶¶ 75-81;

- Count II: Common Law Fraud/Fraud by Omission Under Texas law (On Behalf of the Nationwide Class), *id.* at ¶¶ 82-89;

- Count III: Texas Deceptive Trade Practices Consumer Protection Act (On Behalf of Plaintiff Andrada and the Texas State Class), *id.* at ¶¶ 90-98;

- Count IV: California Unfair Competition Law (On Behalf of Plaintiffs Evans and Kierman and the California State Class), *id.* at ¶¶ 99-105;

- Count V: Florida Unfair and Deceptive Trade Practices (On Behalf of Plaintiff Vossen and the Florida State Class), *id.* at ¶¶ 106-112;

- Count VI: Michigan Consumer Protection Act (On Behalf of Plaintiff Usler and the Michigan State Class), *id.* at ¶¶ 113-119; and

- Count VII: New York Business Laws Section 349 and Section 350-A (On Behalf of Plaintiff Tanz, Sankowich, Karaca, and Gozde and the New York State Class), *id.* at ¶¶ 120-125.

Vital Farms and the Individual Defendants have separately moved to dismiss. Dkt. #17. The Individual Defendants incorporate Vital Farms' arguments and separately argue Plaintiffs have not pleaded facts that show they are personally liable for the alleged wrongdoings. Dkt. #18. Because of the overlapping arguments, Plaintiffs filed one consolidated response to both motions, Dkt. #22, and Defendants filed one consolidated reply in support of their motions, Dkt. #23.

## II.   STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an

entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

To the extent a complaint alleges claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires that plaintiffs go a step beyond the typical pleading standard: the underlying factual circumstances must be pleaded "with particularity." FED. R. CIV. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." While "particularity" varies with the circumstances of each case, Rule 9(b) generally requires specificity of the time, place, contents, and the identity of the person making false representations. *Benchmark Elecs., Inc.*, 343 F.3d at 724; *WMX Techs., Inc.*, 112 F.3d at 179 (requiring the "who, what, when, where, and how" of the alleged fraud be stated).

### III. ANALYSIS

As the Individual Defendants' motion incorporates the arguments made in Vital Farms' motion, the court will first address the arguments made in that motion. The court will then address any separate arguments made by the Individual Defendants. Defendants[4] argue:

- Plaintiffs' breach of warranty, Texas common law fraud, and Texas, California, Florida, Michigan, and New York statutory claims fail because the alleged representations at issue are true and not actionable as a matter of law;

---

[4] Because the Individual Defendants join in Vital Farms' motion, the court will collectively refer to all Defendants.

- Plaintiffs' Texas fraud claim and Texas, California, and New York statutory claims are barred by limitations;

- Plaintiffs' Texas common law fraud-by-omission claim is legally untenable because of the absence of a duty;

- Plaintiffs' Texas common law fraud and Texas, California, Florida, and Michigan statutory claims do not pass muster under Rule 9(b); and

- Plaintiffs' request for permanent injunctive relief is meritless because Plaintiffs lack valid claims and Plaintiffs' allegations show they will not suffer imminent harm or irreparable injury.

Dkt. #17 at 3; Dkt. #18 at 2-3.

**A. False or Actionable Representations**

Defendants contend each of Plaintiffs' causes of action require a false or actionable representation that is not vague, imprecise, subjective, or an opinion. Defendants argue the statements Plaintiffs identify as misrepresentations in the Complaint are plainly true, consistent with Human Farm Animal Care ("HFAC") Standards,[5] or nonactionable because they are vague or subjective.

1. "Pasture Raised"

Defendants contend Plaintiffs identified "photographs of hens outdoors in green grass," as misleading but this representation is "plainly true" because there is no allegation the photograph is not of Vital Farms' hens in a pasture. Dkt. # 17 at 17; Compl. at ¶ 39a. This argument plainly, and perhaps purposefully, misses the gravamen of Plaintiffs' claim, which Defendants only address in a footnote. *See* Dkt. #17 at 17 n.11. Plaintiffs allege this photograph and Vital Farms'

---

[5] Compl. at Exh. 3.

marketing claims that its hens are "pasture raised" are misleading because most hens are unable to actually access any pastures based on the density in which they are housed in the barns. Compl. at ¶¶ 39a, 45-46.

Defendants also contend their use of "pasture raised" conforms to the HFAC Standards and is accurate. The HFAC Standards sets certain standards for the spacing of birds in poultry houses and only require hens have "access" to—but not actual use of—pastures when the temperature is greater than 32 degrees. Dkt. #17 at 17 n.11. Under the HFAC Standards, hens that have never spent any time in a pasture can be considered "pasture raised." As Plaintiffs point out, they do not assert that Vital Farms does not conform to the HFAC's Standard for "pasture raised." Rather, they assert that Vital Farm's use of "pasture raised" is misleading to consumers. Defendants do not cite any case law that a term cannot be misleading to consumers simply because the HFAC has defined it differently from its plain meaning. *See* Dkt. #17 at 17 n.11. This argument fails.

2. Beak tipping, end-of-cycle practices, and hatcheries

Similarly, Defendants argue Vital Farms' statements that its "mission is the humane treatment of farm animals," it is "invested in animal welfare and doing things the right way," and it "acts as stewards of [its] animals" are not inconsistent with its practices regarding beak tipping, end-of-cycle actions, and hatcheries that kill male chicks because it follows HFAC Standards with respect to these practices. And again, Defendants fail to cite any case law in their motion that conformity to third-party standards, which may not represent a term's plain meaning as understood by consumers, renders the term not misleading as a matter of law. Dkt. #17 at 11-12.

### 3. "Ethical" and Mission Statements

Defendants argue representations based on the word "ethical"[6] are not actionable because those statements are imprecise, subjective, and opinions. Dkt. #17 at 12-13. Similarly, Defendants argue Vital Farms' statements regarding its or its farmers' "missions" are not actionable because those statements are vague, aspirational, lack specificity, or constitute opinions. *Id*. at 13. To support their arguments, Defendants cite only *Markman v. Whole Foods Mkt., Inc.*, No. 1:15-CV-681-LY, 2016 WL 10567194, at *6 (W.D. Tex. Aug. 19, 2016) (aspirational statements are not actionable representations), and *Aprigliano v. Am. Honda Motor, Inc.*, 979 F. Supp. 2d 1331, 1341 (recognizing that aspirational statements are not actionable). Dkt. #17 at 13 at n.13. But those cases are easily distinguishable. *Markman* involved a company's statement that it was "continuing to raise the bar even higher on our standards of transparency," which the court held was not actionable under securities law, but no securities claims are asserted here. *See Markman*, 2016 WL 10567194, at *6. Dkt. #17 at 12-13. *Aprigliano* addressed a marketing campaign that a motorcycle was "unbelievably smooth, quiet[,] and vibration[-]free," and the court held those statements were "squarely in the realm of opinion" as it was "obvious that no motorcycle can be completely free of vibration while in motion on a roadway, and thus it seem[ed] incredulous that any buyer would rely on the veracity of that statement." *Aprigliano*, 979 F. Supp. 2d at 1341. Defendants do not contend their statements are so "incredulous" that no reasonable buyer should rely on them.

In addition to failing to cite convincing cases in its motions, Defendants fail to adequately distinguish the cases Plaintiffs cite in support of their claims. In *Animal Legal Defense Fund v.*

---

[6] Specifically, Defendants identify the statements: 1) "Vital Farms is an ethical food company"; (2) "Our ethics are exemplified by our focus on the humane treatment of farm animals"; (3) "Vital Farms makes ethical snacking easy"; (4) "Looking for ethically produced food? You've found it."; (5) Vital Farms is "committed to ethical decision-making"; (6) Vital Farms has an "ethical mission"; (7) Vital Farms has a "mission to bring ethically produced food to the table"; (8) "Our ethics are exemplified by our focus on the humane treatment of farm animals"; and (9) Vital Farms employs an "ethical decision-making model." Dkt. #17 at 13, n.12.

8

*HVFG LLC*, 939 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2013), the district court denied the defendants' motion to dismiss the plaintiffs' claim finding that "a slogan indicating a product is 'humane' might therefore be subject to a false advertising claim" after considering and analogizing federal statutes concerning the "humane" slaughter of livestock. Although the statutes were not directly applicable, the court held "their guidance indicates: (i) that in some contexts, including the treatment of food animals, Congress has found that 'humane' is susceptible of definition; and (ii) that a possible legal definition of 'humane' might reference treatment that does not cause undue pain to an animal." *Id*. at 1002. Defendants try to distinguish *HVFG* because the *HVFG* defendants' practices were banned in California and Vital Farms complies with the HFAC Standards. However, because the *HVFG* defendants operated out of state, they were not accused of violating the California law concerning its animal practices, *id*., and the undersigned has already rejected Defendants' assertion that compliance with the HFAC Standards bars Plaintiffs' claims. Finally, Defendants' attempt to distinguish *HVFG* do not change the case's central holding.

Defendants also attempt to distinguish *Hemy v. Perdue Farms, Inc.*, 2013 WL 1338199, at *7-10 (D.N.J. Mar. 31, 2013), by how Vital Farms and Perdue Farms treat their chickens, but the key takeaway from *Hemy* is that the court allowed similar claims to go forward and thus did not find "humanely raised" to be too vague to form the basis of the plaintiffs' claims.

Accordingly, Defendants have not shown Plaintiffs' claims should be dismissed on this basis.

**B. Texas Common Law Fraud-by-Omission Claim**

Defendants rely on *Pierce v. North Dallas Honey Co.*, No. 3:1-CV-00410-X, 2020 WL 1047903, at *4 (N.D. Tex. Mar. 3, 2020), to argue that Plaintiffs' Texas common law fraud-by-

9

omission claim[7] is legally untenable because there is no duty of disclosure in the consumer advertising context. In *Pierce*, the plaintiffs brought suit alleging the defendant represented that its honey was "raw" and failed to disclose that it heated the honey to a temperature such that it should no longer be considered raw. *Id.* at *1-2. The court dismissed the fraudulent concealment/fraud-by-omission claim with prejudice reasoning that a duty to disclose the "whole truth" only arises in such situations as real estate transactions, commercial contracts, or securities and that implying a duty in the consumer context would "subvert carefully crafted products liability and consumer protection law." *Id.* at *4.

The undersigned disagrees with the rationale of *Pierce*. Fraud by omission is a subcategory of fraud because an omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose. *Four Bros. Boat Works v. Tesoro Petroleum Co.*, 217 S.W.3d 653, 670 (Tex. App.—Houston [14th Dist.] 2006) (citing *Manon v. Solis*, 142 S.W.3d 380, 387 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). A failure to disclose does not constitute fraud unless there is a duty to disclose the information. *Id*. In pleading their fraud/fraud-by-omission claim, Plaintiffs repeatedly refer to Vital Farms' "misrepresentations and omissions." Compl. at ¶¶ 82-89. Plaintiffs do not plead a duty to disclose apart from any created by Vital Farms' misrepresentations. *Id*. Accordingly, the fraud-by-omission claim cannot be severed from Plaintiffs' common law fraud claim. *Pierce's* concern that allowing a fraud-by-omission claim would "subvert carefully crafted products liability and consumer protection law" is unpersuasive since fraud claims *are* allowed in the consumer

---

[7] Plaintiffs pleaded their claim as one for "Common Law Fraud/Fraud By Omission" and relied on both misrepresentations and omissions as the basis for their claim. Compl. at ¶¶ 82-89. Accordingly, this argument does not address the entirety of Plaintiffs' fraud claim.

protection context and the omissions here are only at issue because of the affirmative misrepresentations that are also at issue. *See Pierce*, 2020 WL 1047903, at *4.

**C. Limitations for Plaintiffs' Fraud, Texas, California, and New York Statutory Claims**

Defendants contend Plaintiffs' fraud claim, the Texas, California, and New York statutory claims are barred by limitations because exhibits attached to the Complaint show that Plaintiffs should have discovered, in the exercise of reasonable diligence, the alleged misrepresentations well before the lawsuit was filed. Dkt. #17 at 15 (citing Compl. at Exhs. 1, 2, 4). Defendants contend that because the Exhibits are older than the limitations periods and allegedly contradict Vital Farms' marketing statements, the limitations period had run on these claims. In support of their argument, Defendants rely on generic cases regarding limitations and tolling.

Defendants' argument does not pass muster. Under Defendants' argument, the limitations period could have run before any Plaintiff purchased any Vital Farms' eggs and suffered their injury. Moreover, under Defendants' arguments, a company may continue to purposefully engage in behavior designed to mislead customers without risk of adverse legal consequence if the truth was published somewhere on the internet a long enough time ago. This cannot be the law. Plaintiffs did not plead facts as to when they purchased Vital Farms' eggs or when they discovered Vital Farms' alleged misrepresentations. Defendants have not shown that based on the facts pleaded, these claims should be dismissed under limitations.

**D. Federal Rule of Civil Procedure 9(b)**

Defendants contend Plaintiffs' Texas common law fraud claim and the Texas, California, Florida, and Michigan statutory claims fail to satisfy Rule 9(b)'s heighted pleading requirements. Plaintiffs dispute that the Florida DTPA and Michigan Consumer Protection Act Claims are subject to Rule 9(b) but also contend their claims are sufficiently pleaded.

11

Generally, Defendants contend Plaintiffs fail to specify which specific Plaintiffs saw which specific statements and when they saw those statements. Plaintiffs contend that level of specificity is not required when the misrepresentations are alleged to be part of an ongoing marketing campaign that.

The Rule 9(b) standard is to be imposed "strictly," requiring a plaintiff "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Click v. Gen. Motors LLC*, No. 2:18-CV-455, 2020 WL 3118577, at *4 (S.D. Tex. Mar. 27, 2020) (*quoting Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)). "At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of time, place, and contents of the false representations." *Id*. at *6 (quoting *Williams*, 112 F.3d at 179). "But in cases where the plaintiff is alleging that the fraud occurred over a period of years, the plaintiff is not required to allege all facts supporting every instance when the defendant engaged in fraud." *U.S. ex rel. Davis v. Lockheed Martin Corp.*, No. 4:09-CV-645-Y, 2010 WL 4607411, at *3 (N.D. Tex. Nov. 15, 2010) (citing *United States ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005)). Further, if the fraud occurred over an extended period of time and consists of numerous acts, the Rule 9(b) requirements are less exact. *Id*.

Plaintiffs specifically identified statements made by Vitals Farms that Plaintiffs contend misrepresent Vital Farms' practices. *See* Compl. at ¶¶ 39, 42. Plaintiffs also attached to their Complaint at least five inserts that were included with Vital Farms' eggs. Compl. at Exh. 7. Although not dated, these inserts are distinguished by their volume and issue numbers and include some of the alleged misrepresentations at issue. *Id*. Plaintiffs also attached screenshots of various Instagram posts that include some of the misrepresentations at issue. *Id*. at Exh. 8. These posts

are dated. *Id*. Plaintiffs have specifically identified the statements at issue. Plaintiffs also pleaded that they relied on these statements in their purchases of Vital Farms' eggs. Compl. at ¶¶ 15-23. Although Plaintiffs have not pleaded every fact related to their knowledge of Vital Farms' statements, their reliance, or their purchases, they have pleaded sufficient facts under Rule 9(b) so that Defendants can identify the alleged misrepresentations. Defendants can glean the remaining facts through discovery.

As the undersigned finds Plaintiffs' claims are sufficiently pleaded, the undersigned does not reach the issue of which claims are subject to Rule 9(b)'s standard.

### E. Injunctive Relief

Defendants argue Plaintiffs' request for a permanent injunction is fatally flawed because Plaintiffs have not stated a viable cause of action and there is no imminent or irreparable harm. Defendants' arguments are premature as there is no motion for injunction before the court.

### F. Conclusion

For these reasons, Defendants have not shown that Plaintiffs' claims against Vital Farms are legally untenable or insufficiently pleaded such that they should be dismissed. The undersigned will recommend Vital Farms' motion be denied.

## IV. INDIVIDUAL DEFENDANTS' MOTION

Defendants argue Plaintiffs have pleaded no facts that support liability against the Individual Defendants. Plaintiffs argue that Defendants Diez-Conseco and O'Hayer can be liable based on the statements they made in Vital Farms' SEC S-1 Registration Statement, which Plaintiffs contend is referred to and incorporated by reference into the Complaint. Citing various state cases, Plaintiffs also argue the Individual Defendants can be held liable because they pleaded each Individual Defendant "exercises a high degree of control and/or influence over the

13

advertising, marketing, and business operations of Vital Farms—and given its small management team—effectuated day-to-day control over its business and marketing." Dkt. #22 at 41.

A. **Pleaded Facts**

The undersigned will begin with the pleaded facts. Defendants Diez-Canseco's and Marcus's names appear twice in the Complaint—in the caption and in the paragraphs identifying them as defendants. Compl. at 1, ¶¶ 26-27. Diez-Canseco "is the President, Chief Executive Officer, and a Director of Vital [Farms]" and is alleged to have "conceived, controlled, and had supervision over Vital's marketing and Advertising." *Id*. at ¶ 26. Marcus "is the Chief Marketing Officer of Vital [Farms]" and "was responsible for the false and misleading marketing materials described herein." *Id*. at ¶ 27. These are the only mentions of Diez-Canseco and Martinez. Defendant O'Hayer "is the Founder and Executive Chairman of Vital [Farms]" and "exercises a high degree of control and/or influence over the advertising, marketing, and business operations of Vital [Farms]—and, given its small management team, effectively exercises day-to-day control over the business and its marketing." *Id*. at ¶ 25. Plaintiffs also allege O'Hayer has previously acknowledged Vital Farms' end-of-life practices to be both stressful and not humane, *id*. at ¶¶ 11.c, 43.a (both citing Exh. 4); is the CEO of Ovabrite, a third-party company that Vital Farms and O'Hayer have said would develop technology to determine a chick's gender before it hatched, *id*. at ¶¶ 11e, 43.c.ii. As to Vital Farms' SEC Registration Statements, Plaintiffs allege those Statements misrepresent that Vital Farms has a humane and ethical business model, *id*. at ¶¶ 11, 24, 40.

B. **Registration Statements**

Plaintiffs have failed to show the SEC Registration Statements give rise to personal claims against the Individual Defendants. The two cases Plaintiffs cite to support this theory involve

14

claims brought under federal securities law, which is a very different legal framework than the claims asserted here. *In re American Int'l Grp. Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 538 (S.D.N.Y. 2010); *In re Interlink Electronics, Inc. Sec. Litig.*, 2008 WL 4531967, at *5 (C.D. Cal. Oct. 6, 2008). Additionally, Plaintiffs do not plead that any Plaintiff relied on any Registration Statement.

Finally, although Plaintiffs summarily conclude the Registration Statements "are properly considered on a motion to dismiss" because they are "referred to an incorporated by reference in the Complaint," Plaintiffs have not actually shown that to be true. In deciding a motion to dismiss, the court may "rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation omitted); *see also Carter v. Target Corp.*, 541 F. App'x 413, 416 (5th Cir. 2013) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim"). The Registration Statements were not attached to the Complaint, nor are they specifically identified with their locations in the Complaint, nor were they expressly incorporated by reference. Additionally, even if any of these criteria were satisfied, Plaintiffs have not shown they are "central" to their claims.

### C. Pleading Sufficiency

Regardless of whether state law allows corporate officers to be held liable for a corporation's torts and regardless of whether Plaintiffs' claims are evaluated under Rule 9(b) or Rule 8, Plaintiffs' conclusory allegations in the Complaint concerning the Individual Defendants do not support their claims that *these* corporate officers are liable. Plaintiffs pleaded no facts about Diez-Canseco or Marcus other than their job titles and assumptions about their roles. Regarding

O'Hayer, Plaintiffs similarly rely on his job title and assumption about his role. To the extent Plaintiffs contend he stated Vital Farms' end-of-life practices are stressful and not humane, Plaintiffs do not allege this statement to be false or relied upon to cause their injury. *See* Compl. at ¶¶ 11.c, 43.a. To the extent Plaintiffs contend he stated Vital Farms was working with another company to develop technology to determine a chick's gender before it hatched, Plaintiffs do not allege this statement was false when he made it or that it was relied upon by any Plaintiff. *See id.* at 11e, 43.c.ii.

Accordingly, Plaintiffs have not pleaded sufficient facts that support a plausible claim for relief against any Individual Defendant. The undersigned will recommend the Individual Defendants be dismissed.

## V. RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS** that Defendant Vital Farms, Inc.'s Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. #17) be **DENIED**. The undersigned further **RECOMMENDS** Defendants Matthew O'Hayer, Russell Diez-Canseco, and Scott Marcus's Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. #18) be **GRANTED**.

## VI. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the

Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 31, 2022.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE